UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **VICTOR ESTRADA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-21-CV-00114-FM** |
| | § | |
| **EXPERIAN INFORMATION** | § | |
| **SOLUTIONS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Before the court is "Defendant Experian Information Solution Inc.'s Motion for Summary Judgment" ("Motion") [ECF No. 42], filed January 13, 2023, by Experian Information Solutions, Inc. ("Experian" or "Defendant"). Therein, Defendant moves to dismiss Victor Estrada's ("Plaintiff") Fair Credit Reporting Act ("FCRA"), arguing he has not shown that: Defendant failed to follow reasonable reporting procedures; failed to reasonably investigate Plaintiff's credit report disputes; or that Defendant's reporting caused actual or emotional harm.[1] For the following reasons, Defendant's Motion is **GRANTED**.

## I.   BACKGROUND

### A.   *Factual Background*

Plaintiff purchased several appliances from Conn's Appliances ("Conn's") in 2016, which were financed through a payment plan requiring thirty-four monthly payments of $124.62 ("the

---

[1] "Defendant Experian Information Solution Inc.'s Motion for Summary Judgment" ("Def.'s Mot.") 1–2, ECF No. 42, filed Jan. 13, 2023.

2016 Account").[2] Plaintiff made regular payments on the 2016 Account through October 2019.[3] In November, Plaintiff purchased computer goods from Conn's, which were financed through a new payment plan requiring thirty-six monthly payments of $186.54 ("the 2019 Account").[4] When he opened this second account, Conn's allegedly told Plaintiff the balance for the 2016 Account would be transferred into the 2019 Account and the 2016 Account would be closed.[5] Plaintiff does not recall getting this assurance in writing, however.[6] Indeed, the promissory note associated with the 2019 Account does not reflect that the 2016 Account was consolidated into the 2019 Account.[7]

Shortly thereafter, Plaintiff began making payments on the 2019 Account but ceased paying the 2016 Account, believing the latter had been rolled into the former.[8] In January 2020, however, Conn's began contacting Plaintiff about the 2016 Account, asserting payments on that account were past-due.[9] Plaintiff explained that he thought the 2016 Account had been incorporated into the 2019 Account yet nevertheless offered to pay off the 2016 Account directly.[10] However, Conn's agents allegedly told him repeatedly that he "didn't have to do that because [the

---

[2] "Plaintiff's Motion for Partial Summary Judgment" ("Pl.'s Mot."), Ex. A, "2016 Promissory Note and Security Agreement" 1, ECF No. 40-3, filed Jan. 13, 2023.

[3] "Memorandum in Support of Experian Information Solutions, Inc.'s Motion for Summary Judgment" ("Def. Mem. in Supp."), Ex. 2, "Loan Ledger" 3–4, ECF No. 46-2, filed Jan. 24, 2023.

[4] Pl.'s Mot., Ex. B, "2019 Promissory Note and Security Agreement" 1, ECF No. 40-4, filed Jan. 13, 2023.

[5] Pl.'s Mot., Ex. C, "Oral Deposition of Victor Estrada" 45:4–16, ECF No. 40-5, filed Jan. 13, 2023.

[6] *Id*. at 47:24–48:2.

[7] 2019 Promissory Note and Security Agreement at 1.

[8] Oral Deposition of Victor Estrada at 48:9–20.

[9] *Id*. at 48:3–16.

[10] *Id*. at 49:10–16.

2016 Account] was already closed and the amount had been transferred, it just was not showing on their records" as Conn's had recently started using a new billing system.[11]

Conn's sent Plaintiff a letter in February 2020 ("Conn's Deletion Letter"), explaining that, "[b]ecause we are not able to verify the information previously reported on the [2016 Account], we are deleting it from your credit report with the three major Credit Reporting Agencies" ("CRAs").[12]

The next month, Plaintiff sent Experian a dispute letter, attaching the Conn's Deletion Letter and asserting the 2016 Account should "be marked as a paid and closed account with zero late payments."[13] Experian then sent Conn's an Automated Consumer Dispute Verification form ("ACDV"), which is used by CRAs to communicate consumer disputes to creditors, and included Plaintiff's dispute letter and the Conn's Deletion Letter.[14] In response, Conn's verified that Experian should continue reporting the 2016 Account as delinquent.[15] Experian sent Plaintiff the results of the dispute in April 2020, showing the 2016 Account and its past-due status as remaining on his credit report.[16]

Plaintiff again requested that Experian remove the 2016 Account from his credit report, or at least reflect it as paid-and-closed, and again included the Conn's Deletion Letter.[17] Experian

---

[11] *Id*. at 49:10–20.

[12] Pl.'s Mot., Ex. E, "First Conn's Letter" 1, ECF No. 40-7, filed Jan. 13, 2023.

[13] Pl.'s Mot. Ex. F, "Plaintiff's March 2020 Letter to Defendant" 1, 4, ECF No. 40-8, filed Jan. 13, 2023.

[14] Def.'s Mot., Ex. 7, "March ACDV" 2, ECF No. 42-2, filed Jan. 13, 2023; Def. Mem. in Supp., Ex. 23, "Deposition of Christina Hamilton" 14:16–15:7, ECF No. 46-10, filed Jan. 24, 2023.

[15] Deposition of Christina Hamilton at 15:13–21.

[16] Pl.'s Mot., Ex. H, "April 8 Dispute Resolution Letter" 1–2, ECF No. 40-10, filed Jan. 13, 2023.

[17] Pl.'s Mot., Ex. J, "Plaintiff's April 2020 Letter to Defendant" 1, 3, ECF No. 40-12, filed Jan. 13, 2023.

then sent another ACDV to Conn's (although this time neglecting to include the Conn's Deletion Letter), and Conn's again verified the 2016 Account was delinquent.[18] Experian sent Plaintiff the dispute results, showing the 2016 Account as continuing to impact his credit report.[19]

In May 2020, Conn's sent Plaintiff a letter ("Conn's May 2020 Letter") asserting that it had "carefully researched" the 2016 Account, had found no "errors or discrepancies," and therefore was "unable to delete" the 2016 Account from his credit report.[20]

Two months later, Plaintiff was denied a mortgage by Rocky Mountain Mortgage Company "based in whole or in part on information obtained" from three major CRAs—Equifax, Experian, and TransUnion.[21]

Around the same time, Plaintiff filed a complaint against Conn's with the Better Business Bureau concerning the 2016 Account.[22] Conn's responded that "[t]he balance from [the 2016 Account] was not added to [the 2019 Account] as the remaining balance was under the threshold to be added" ("Conn's BBB Complaint Response Letter").[23]

Plaintiff again sought to secure a home mortgage in August 2020.[24] A mortgage broker discovered "his credit score was not high enough to apply for a conventional mortgage," and advised Plaintiff that "the most important account to be addressed was [the 2016 Account] because

---

[18] Def.'s Mot., Ex. 11, "April ACDV" 2, ECF No. 42-6, filed Jan. 13, 2023; Deposition of Christina Hamilton at 25:20–26:21.

[19] Def.'s Mot., Ex. 12, "April 24 Dispute Resolution Letter" 1–2, ECF No. 42-7, filed Jan. 13, 2023.

[20] Def. Mem. in Supp., Ex. 20, "Second and Third Conn's Letters" 3, ECF No. 46-7, filed Jan. 24, 2023.

[21] Def. Mem. in Supp., Ex. 4, "Statement of Credit Denial" 1, ECF No. 46-4, filed Jan. 24, 2023.

[22] Def. Mem. in Supp., Ex. 5, "Conn's Response to BBB Complaint" 2, ECF No. 46-5, filed Jan. 24, 2023.

[23] *Id.*

[24] Pl.'s Mot., Ex. 17, "PCB Credit Report 1," ECF No. 40-17, filed Jan. 13, 2023.

it was the only account reporting as late in the last 12 months."[25] Plaintiff subsequently paid off the remaining $319.63 balance of the 2016 Account.[26]

In November 2020, Conn's sent Plaintiff another letter ("Conn's November 2020 Letter"), asserting "the information being reported [for the 2016 Account] is accurate."[27]

Later that same month, Plaintiff called Experian to again dispute the 2016 Account.[28] Experian again sent an ACDV to Conn's requesting verification of the information reported for the 2016 Account.[29] Conn's responded that Plaintiff's 2016 Account "should continue reporting with delinquent payment history" and updated the 2016 Account to reflect it as being paid-out but having once been 150 days past due.[30] Experian mailed the results of the investigation to Plaintiff.[31]

In January 2021, Plaintiff again sought to secure a mortgage, which was approved in March 2021.[32]

Plaintiff mailed Experian a final time in February 2021, asserting the 2016 Account "should have been transferred and was closed in error."[33] Experian again sent an ACDV to Conn's,

---

[25] Pl.'s Mot., Ex. N, "Declaration of Stacy Luera" 1, EFC No 40-16, filed Jan. 13, 2023.

[26] Loan Ledger at 4.

[27] Second and Third Conn's Letters at 1.

[28] Deposition of Christina Hamilton at 29:1–30:4.

[29] *Id.* at 30:5–10.

[30] *Id.* at 30:11–19; Def.'s Mot., Ex. 17, "November ACDV" 2, ECF No. 42-12, filed Jan. 13, 2023.

[31] Def.'s Mot., Ex. 15, "November Dispute Resolution Letter" 2–5, ECF No. 42-10, filed Jan. 13, 2023.

[32] Pl.'s Mot., Ex. R, "PCB Credit Report 2" 1, EFC No 40-20, filed Jan. 13, 2023; Declaration of Stacy Luera at 1.

[33] Pl.'s Mot., Ex. S, "Plaintiff's February 2021 Letter to Defendant" 1, ECF No. 40-21, filed Jan. 13, 2023.

including Plaintiff's dispute letter, and Conn's again verified that Experian "should continue reporting the account . . . as late in 2020."[34] Experian sent Plaintiff the results of the investigation.[35]

Experian eventually received an automatic update from Conn's for the 2016 Account showing its status as "Paid" and "Closed/Never late," which was reflected in Plaintiff's December 2021 credit report.[36]

### B.    Procedural Background

Plaintiff sued Experian and Equifax Information Services, LLC ("Equifax") in May 2021, alleging violations of the FCRA.[37] Specifically, Plaintiff asserts Experian and Equifax "failed to maintain . . . reasonable procedures to assure maximum possible accuracy of the information" on his credit report in violation of 15 U.S.C. § ("Section") 1681e(b) and "failed to conduct a reasonable investigation in response to Plaintiff's dispute in violation of" Section 1681i.[38]

Plaintiff and Equifax settled in December, and Equifax was dismissed shortly thereafter.[39]

Following discovery, Plaintiff and Defendant Experian filed motions for summary judgment in January 2023.[40] Defendant's Motion argues Plaintiff has not shown that: Defendant

---

[34] November ACDV at 2; Deposition of Christina Hamilton at 35:6-21.

[35] Def.'s Mot., Ex. 24, "February Dispute Resolution Letter," ECF No. 42-14, filed Jan. 13, 2023.

[36] Def.'s Mot., Ex. 18, "December Credit Report" 7, ECF No. 42-13, filed Jan. 13, 2023.

[37] "Complaint," ECF No. 1, filed May 19, 2021.

[38] *Id*. at 3–4 ¶¶ 19–20.

[39] "Stipulation of Dismissal as to Defendant Equifax Information Services, LLC" 1, ECF No. 22, filed Feb. 16, 2022; "Partial Order of Dismissal" 1, ECF No. 23, entered Feb. 17, 2022.

[40] *See* Pl.'s Mot.; Def.'s Mot.

failed to follow reasonable reporting procedures; failed to reasonably investigate Plaintiff's credit report disputes; or that Defendant's reporting caused actual or emotional harm.[41]

## II.   __LEGAL STANDARD__

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[42] A dispute over a material fact is genuine "when there is evidence sufficient for a rational trier of fact to find for the non-moving party."[43] Substantive law defines which facts are material.[44]

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits demonstrating the absence of a genuine issue of material fact.[45] When considering only admissible evidence in the pretrial record,[46] the court will "view all facts in the light most favorable to the non-moving party" and draw all factual inferences in the nonmovant's favor.[47] If the moving party cannot demonstrate the absence of a genuine issue of material fact, summary judgment is inappropriate.[48]

Once the moving party has met its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a

---

[41] Def.'s Mot. at 1–2.

[42] FED. R. CIV. P. 56(a).

[43] *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 323 (5th Cir. 2002) (citation omitted).

[44] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[45] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[46] *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).

[47] *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 582 (5th Cir. 2006) (per curiam) (citation omitted).

[48] *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

genuine issue for trial.[49] The nonmoving party's burden is not satisfied with "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[50] The court does not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[51] When reviewing the parties' submissions, the court does not "weigh the evidence or evaluate the credibility of witnesses."[52] Once the nonmovant has had the opportunity to make this showing, summary judgment will be granted "if no reasonable juror could find for the nonmovant."[53]

## III.   **DISCUSSION**

Plaintiff claims Defendant "failed to maintain . . . reasonable procedures to assure maximum possible accuracy of the information" on his credit report in violation of Section 1681e(b) and "failed to conduct a reasonable investigation in response to Plaintiff's dispute in violation of" Section 1681i.[54] Defendant argues Plaintiff has not shown that: Defendant failed to follow reasonable reporting procedures; failed to reasonably investigate Plaintiff's credit report disputes; or that Defendant's reporting caused actual or emotional harm.[55]

---

[49] *Celotex*, 477 U.S. at 324 (internal quotation marks and citation omitted).

[50] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (internal quotation marks and citations omitted).

[51] *Id.* at 1075 (emphasis removed).

[52] *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).

[53] *Id.*

[54] *Id.* at 3–4 ¶¶ 19–20.

[55] Def.'s Mot. at 1–2.

Section 1681e(b) requires that CRAs "follow reasonable procedures to assure maximum possible accuracy" of information they publish in consumer credit reports.[56] If a consumer disputes the "completeness or accuracy" of any item on their credit report and so notifies a CRA, Section 1681i requires the CRA to "conduct a reasonable reinvestigation" into the accuracy of the item and "record the current status of the disputed information, or delete the item from the file" within thirty days of being notified of the dispute.[57] Although neither section facially requires an actual inaccuracy to exist for a plaintiff to state a claim under the FCRA, courts in this circuit impose such a requirement.[58] Accordingly, before considering whether Defendant followed reasonable reporting procedures, reasonably investigated Plaintiff's disputes, or caused Plaintiff harm, the court must determine whether Plaintiff's credit report was inaccurate.

A.      *Whether Plaintiff's Credit Report was Inaccurate*

Federal courts overwhelmingly agree that the FCRA only requires CRAs to investigate factual inaccuracies; they need not resolve legal disputes over an underlying debt.[59] These courts reason that CRAs are "neither qualified nor obligated to resolve" legal issues, i.e., those that turn

---

[56] 15 U.S.C. § 1681e(b).

[57] *Id*. at 1681i(a)(1)(A).

[58] *Toliver v. Experian Info. Sols., Inc.*, 973 F.Supp.2d 707, 715 (S.D. Tex. 2013) (citing *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 267 n. 3 (5th Cir. 2000)) ("In order to establish a *prima facie* case under § 1681e(b), a consumer must produce some evidence of an inaccuracy in her credit report."); *Walters v. Certegy Check Servs., Inc.*, No. A-17-CV-1100-SS, 2018 WL 1278212, at *4 (W.D. Tex. Mar. 12, 2018) ("[A] plaintiff must first contend a consumer report contained inaccurate information to establish a claim under § 1681i for failure to conduct a reasonable investigation."); *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 751 (S.D. Tex. 2006), *aff'd*, 224 Fed.App'x. 415 (5th Cir. 2007).

[59] *See, e.g., Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891–92 (9th Cir. 2010); *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567–68 (7th Cir. 2021); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1244–45 (10th Cir. 2015); *Williams v. Colonial Bank*, 826 F.Supp. 415, 418 (M.D. Ala. 1993); *Holland v. Chase Bank USA, N.A.*, 475 F.Supp.3d 272, 276–77 (S.D.N.Y. 2020).

"on questions that can only be resolved by a court of law."[60] Thus, courts have concluded that "reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."[61]

Although the Fifth Circuit has yet to address whether CRAs need ever investigate legal disputes, or where the line exists between legal and factual disputes in the FCRA context, this court confronted the issue in *Hurst v. Equifax Information Services, LLC*. It concluded, however, that the dispute before it was not a legal one and therefore did not "specifically endorse or reject" the view that CRAs have no duty to investigate legal disputes over a reported debt.[62] As in *Hurst*, the threshold question here is whether Plaintiff's credit report reflected a factual or legal inaccuracy. If the latter, then Plaintiff's claim may fail as a matter of law.

The Seventh Circuit has provided "helpful guideposts" for determining when alleged credit reporting inaccuracies turn on factual versus legal issues.[63] "The paradigmatic example of a legal dispute," the Court noted, "is when a consumer argues that although his debt exists and is reported in the right amount, it is invalid due to a violation of law. . . . In contrast, examples of factual inaccuracies include the amount a consumer owes, and what day a consumer opened an account or incurred a payment. These questions do not require the consumer reporting agencies to make any legal determinations about the facts or legal judgments. A legal question may also be resolved as a matter of fact if a tribunal—such as a court or arbitrator—has adjudicated the matter. . . . [T]he

---

[60] *DeAndrade*, 523 F.3d at 68.

[61] *Carvalho*, 629 F.3d at 892.

[62] *Hurst v. Equifax Information Services, LLC*, No. SA-20-CV-1366-JKP-ESC, 2021 WL 5926125, at *2, 6 (W.D. Tex. Dec. 15, 2021).

[63] *Chuluunbat*, 4 F.4th at 567.

central question is whether the alleged inaccuracy turns on *applying* law to facts or simply *examining* the facts alone."[64]

Several cases exemplify when a disputed inaccuracy is factual or legal in nature:

In *Hurst*, a plaintiff allegedly signed a residential lease that she and her landlord verbally agreed to terminate several months later.[65] Nevertheless, the landlord retained a collection company, which subsequently furnished information to CRAs showing the plaintiff as delinquent on the lease.[66] Addressing the issue at the motion to dismiss stage, this court concluded that the dispute was plausibly factual and not legal since "[w]hether Plaintiff is responsible for the alleged debt is plausibly determined by an investigation asking the Landlord whether it had terminated the lease. If the Landlord simply answers yes to that factual inquiry, then the credit reporting agency has no need to delve into any legal ramifications of the terminated lease."[67] There was no indication, however, that any CRAs contacted the landlord to verify or repudiate the debt.

In *DeAndrade v. Trans Union LLC*, the plaintiff challenged a loan with which he had purchased windows as having been fraudulently obtained, filed suit in state court, and stopped making payments toward that loan, which remained on his credit report while litigation was proceeding.[68] The First Circuit affirmed summary judgment in favor of the CRA, noting that the plaintiff was attacking the loan's validity, which "turns on questions that can only be resolved by a court of law, such as whether DeAndrade ratified the loan. This is not a factual inaccuracy that

---

[64] *Id.* at 567–68 (internal citations omitted).

[65] *Hurst*, 2021 WL 5926125, at *1.

[66] *Id.*

[67] *Id.* at 6.

[68] *DeAndrade*, 523 F.3d at 64.

could have been uncovered by a reasonable reinvestigation," the Court concluded, "but rather a legal issue that a credit agency such as Trans Union is neither qualified nor obligated to resolve under the FCRA."[69]

In *Carvalho v. Equifax Information Services, LLC*, the plaintiff received medical treatment, which was supposed to be paid for by her insurance.[70] Her insurance never paid the bill, nor did she, and eventually the debt was reported to CRAs.[71] The plaintiff disputed the debt to the CRAs, claiming her insurance company was wrongfully refusing to pay, and asked the CRAs to investigate.[72] The Ninth Circuit concluded, however, that the plaintiff's dispute with her creditor was legal in nature: she did "not contend that the . . . account [did] not pertain to her, that the amount past due [was] too high or low, or that any of the listed dates [were] wrong."[73] Instead, she asserted her credit report was "misleading because she was not legally obligated to pay" the medical bill until the issue between her insurance provider and the medical provider was cleared up.[74] "The fundamental flaw in Carvalho's conception of the reinvestigation duty is that credit reporting agencies are not tribunals. They simply collect and report information furnished by others."[75]

In *Chuluunbat v. Experian Information Solutions, Inc.*, plaintiffs claimed their debts were not held by the creditors listed on their credit reports and brought this to the attention of CRAs,

---

[69] *Id*. at 68.

[70] *Carvalho*, 629 F.3d at 882–83.

[71] *Id*. at 882.

[72] *Id*.

[73] *Id*. at 891.

[74] *Id*.

[75] *Id*.

who allegedly failed to adequately investigate.[76] The Court noted that the claims before it were not purely legal disputes since the plaintiffs were merely contesting who owned their debts rather than the legal validity of those debts.[77] Nevertheless, the Court affirmed judgment for the CRAs, holding that "whether a debt was assigned—absent a previous decision by a tribunal—is a question that requires a legal determination, placing it outside the competency of a consumer reporting agency."[78] Plaintiffs did not "contest their debts' existence or that the debts [were] in improper amounts. Rather, as with a pure challenge to a debt's legal validity," they questioned "the legal relationship of different parties to [their] debts."[79]

Plaintiff here asserts his credit report presented a purely factual inaccuracy, likening his case to *Hurst*, arguing that Defendant merely needed "to ask Conn's whether the remaining balance from [the 2016 Account] was rolled into [the 2019 Account]."[80] But *Hurst* is distinguishable: In that case, two parties formed a contractual agreement, one of the parties later asserted the agreement had been terminated, yet the CRAs never contacted the other party to corroborate or refute the first party's assertion. Had they done so, both parties may have agreed the contract was in fact terminated, meaning the CRAs would have had no occasion to make any legal judgments or apply law to facts.

---

[76] *Chuluunbat*, 4 F.4th at 565.

[77] *Id*. at 568.

[78] *Id*.

[79] *Id*.

[80] Resp. at 5.

As in *Hurst*, the instant case pertains to an alleged verbal modification of an existing contract.[81] But unlike *Hurst*, Defendant here *did* receive statements from both parties to the disputed contract, and those statements conflicted. Plaintiff contacted Defendant four times asserting the 2016 Account should have been marked as "paid and closed [] with zero late payments"[82] or that it "should have been transferred and was closed in error."[83] He also provided Defendant with the Conn's Deletion Letter in which Conn's allegedly committed to deleting the 2016 Account from Plaintiff's credit report because it was "not able to verify the information previously reported" on that account.[84] Each time Plaintiff contacted Defendant, Defendant provided Conn's with Plaintiff's evidence, but Conn's nevertheless consistently contradicted Plaintiff's position, telling Defendant the 2016 Account should continue reporting as delinquent.[85] Thus, Defendant was not confronted with a mere factual inaccuracy of the kind this court found in *Hurst*.

In fact, even the post-discovery evidence presented on summary judgment fails to establish that Conn's agreed the 2016 Account was or should have been rolled into 2019 Account. The Conn's Deletion Letter does not confirm any account roll-over but merely states that Conn's was "not able to verify the information" reported on the 2016 Account.[86] Even less supportive, the

---

[81] When Plaintiff opened the 2019 Account, he was told the 2016 Account would be rolled into the 2019 Account, but he does not recall getting this assurance in writing. Oral Deposition of Victor Estrada at 47:24–48:2.

[82] Plaintiff's April 2020 Letter to Defendant at 1; Plaintiff's March 2020 Letter to Defendant at 1; Deposition of Christina Hamilton at 29:1–30:4.

[83] Plaintiff's February 2021 Letter to Defendant at 1.

[84] Plaintiff's March 2020 Letter to Defendant at 4; Plaintiff's April 2020 Letter to Defendant at 3.

[85] Deposition of Christina Hamilton at 15:13–21, 25:20–26:21, 30:11–19, 35:6-21; April ACDV at 2; November ACDV at 2.

[86] First Conn's Letter at 1.

Conn's May 2020 Letter asserted that Conn's had "carefully researched" the 2016 Account, had found no "errors or discrepancies," and therefore was "unable to delete" the 2016 Account from Plaintiff's credit report.[87] Similarly, the Conn's November 2020 Letter maintained that "the information being reported [for the 2016 Account was] accurate."[88] The Conn's BBB Complaint Response Letter, moreover, stated that "[t]he balance from [the 2016 Account] was not added to [the 2019 Account] as the remaining balance was under the threshold to be added."[89]

Plaintiff attempts to counter this evidence by providing internal call notes that purportedly show Conn's customer service agents affirming that the 2016 Account should have been transferred to the 2019 Account.[90] But it is unclear whether these ambiguous, shorthand notes reflect Conn's' position or merely relay what Plaintiff told customer service agents.[91] Furthermore, their credibility is undermined by Conn's' aforementioned letters to Plaintiff. Finally, although Conn's eventually updated the 2016 Account to show it as "Paid" and "Closed/Never late,"[92] that may simply have been because Conn's, per the Conn's Deletion Letter, was unable "to verify the information" reported on that account.[93]

In short, Defendant had before it two parties who disagreed as to whether their contract had been modified. Plaintiff was not challenging the facts surrounding the 2016 Account, such as

---

[87] Second and Third Conn's Letters at 3.

[88] *Id.* at 1.

[89] Conn's Response to BBB Complaint at 2.

[90] Pl.'s Mot., Ex. D, "Conn's Internal Call Notes" 1–5, ECF No. 40-6, filed Jan. 13, 2023.

[91] *See id.* at, e.g., 1 ("Cust[omer] called in to check status because [the 2016 Account] should be closed out due to being combined please review and contact cust[omer] with an update").

[92] December Credit Report at 7.

[93] First Conn's Letter at 1.

the date it was opened or the remaining balance just prior to its alleged roll-over, but whether it was still valid as a stand-alone debt. To resolve the controversy, Defendant would have needed to adjudicate between Plaintiff and Conn's by gathering evidence and determining evidentiary credibility. Indeed, if even the evidence compiled on summary judgment fails to conclusively show the 2016 Account was consolidated into the 2019 Account, then certainly Defendant was "neither qualified nor obligated to resolve" that issue.[94] Determining whether the 2016 Account was rolled into the 2019 Account was therefore the province of a factfinder and legal in nature.

Having concluded that Plaintiff's credit report reflected a legal dispute as opposed to a factual inaccuracy, the court is confronted with a question of first impression, namely, whether CRAs are required to investigate the legal validity of disputed debts. The court now joins the overwhelming majority of other federal courts in finding that CRAs are not so required. CRAs "are not tribunals" and "are ill equipped to adjudicate contract disputes."[95] Thus, "reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."[96] Instead, determining legal duties under a contract "is a task for a court."[97]

Accordingly, as Plaintiff has failed to show a factual inaccuracy on his credit report, he has likewise failed to show he is entitled to relief under Section 1681e(b) or 1681i of the FCRA. But that does not mean Plaintiff was without remedy. First, "the FCRA provides an alternative remedy for consumers in cases such as this: pursuant to Section 1681i(c), they may submit a statement

---

[94] *See DeAndrade*, 523 F.3d at 68.

[95] *Carvalho*, 629 F.3d at 891.

[96] *Id.* at 892.

[97] *Chuluunbat*, 4 F.4th at 568.

detailing their version of the dispute to be included in their credit report."[98] However, simply alerting a CRA that one disputes something on one's credit report and requesting that a CRA investigate, as Plaintiff did here, is not the same as providing a formal statement detailing one's version of the dispute to be included in that report.[99] Second, Plaintiff could have sought "to resolve the issue in a suit against" Conn's.[100] Plaintiff's failure to do either does not entitle him to seek relief against CRAs when the underlying credit reporting issue was a legal dispute.

### B.    Remaining Arguments

According to Defendant, Plaintiff has not shown that: Defendant failed to follow reasonable reporting procedures; failed to reasonably investigate Plaintiff's credit report disputes; or that Defendant's reporting caused actual or emotional harm.[101] However, because Plaintiff has failed to show a factual inaccuracy on his credit report, which is a prerequisite to establishing a claim under Section 1681e(b) or 1681i, the court need not address these contentions.

## IV.    CONCLUSION

For the foregoing reasons, it is **HEREBY ORDERED** that "Defendant Experian Information Solution Inc.'s Motion for Summary Judgment" [ECF No. 42] is **GRANTED**.

**SIGNED AND ENTERED** this **26**th day of **April 2023.**

**FRANK MONTALVO**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[98] *DeAndrade*, 523 F.3d at 69; *see* 15 U.S.C. § 1681i(c); *Williams*, 826 F.Supp. at 418; *Chuluunbat*, 4 F.4th at 569.

[99] *See, e.g., DeAndrade*, 523 F.3d at 64, 69; *Williams*, 826 F.Supp. at 417–18; *Chuluunbat*, 4 F.4th at 565, 569.

[100] *Carvalho*, 629 F.3d at 891; *see Chuluunbat*, 4 F.4th at 569.

[101] Def.'s Mot. 1–2.