# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **VICTOR ESTRADA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-21-CV-00114-FM** |
| | § | |
| **EXPERIAN INFORMATION** | § | |
| **SOLUTIONS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER DENYING MOTION TO ALTER JUDGMENT

Before the court is "Plaintiff's Motion to Alter Judgment" ("Motion") [ECF No. 74], filed May 24, 2023, by Victor Estrada ("Plaintiff"). Therein, Plaintiff moves the court to set aside its recent decision granting summary judgment in favor of Experian Information Solutions, Inc. ("Experian" or "Defendant").[1] For the following reasons, Plaintiff's Motion is **DENIED**.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff purchased appliances from Conn's Appliances ("Conn's") in 2016, financed through a payment plan ("2016 Account").[2] He paid that account regularly through October 2019.[3] In November 2019, Plaintiff purchased computer goods from Conn's, which were financed

---

[1] "Plaintiff's Motion to Alter Judgment" ("Mot.") 1, ECF No. 74, filed May 24, 2023.

[2] "Plaintiff's Motion for Partial Summary Judgment" ("Pl.'s MSJ"), Ex. A, "2016 Promissory Note and Security Agreement" 1, ECF No. 40-3, filed Jan. 13, 2023.

[3] "Memorandum in Support of Experian Information Solutions, Inc.'s Motion for Summary Judgment" ("Def. Mem. in Supp."), Ex. 2, "Loan Ledger" 3–4, ECF No. 46-2, filed Jan. 24, 2023.

through a new payment plan ("2019 Account").[4] When he opened this second account, Conn's allegedly told Plaintiff the balance for the 2016 Account would be transferred into the 2019 Account and the 2016 Account would be closed.[5] Plaintiff therefore made payments on the 2019 Account but ceased paying the 2016 Account.[6] In January 2020, Conn's began contacting Plaintiff about the 2016 Account, asserting payments on that account were past-due.[7]

Nevertheless, in February 2020, Conn's sent Plaintiff a letter ("Conn's Deletion Letter"), explaining that, "[b]ecause we are not able to verify the information previously reported on the [2016 Account], we are deleting it from your credit report with the three major Credit Reporting Agencies" ("CRAs").[8] That deletion did not happen, however.

The next month, Plaintiff mailed Experian asserting the 2016 Account should be marked as paid, closed, and with zero late payments, and attaching the Conn's Deletion Letter.[9] Experian sent Conn's an Automated Consumer Dispute Verification form ("ACDV"), including Plaintiff's

---

[4] Pl.'s MSJ, Ex. B, "2019 Promissory Note and Security Agreement" 1, ECF No. 40-4, filed Jan. 13, 2023.

[5] Pl.'s MSJ, Ex. C, "Oral Deposition of Victor Estrada" 45:4–16, ECF No. 40-5, filed Jan. 13, 2023.

[6] *Id.* at 48:9–20.

[7] *Id.* at 48:3–16.

[8] Pl.'s MSJ, Ex. E, "First Conn's Letter" 1, ECF No. 40-7, filed Jan. 13, 2023.

[9] Pl.'s MSJ Ex. F, "Plaintiff's March 2020 Letter to Defendant" 2, 4, ECF No. 40-8, filed Jan. 13, 2023.

dispute letter and the Conn's Deletion Letter.[10] Conn's responded that Experian should continue reporting the 2016 Account as delinquent.[11]

Plaintiff mailed Experian again, requesting it mark the 2016 Account as paid-and-closed, and again included the Conn's Deletion Letter.[12] Experian sent another ACDV to Conn's, and Conn's again verified the 2016 Account was delinquent.[13]

In May 2020, Conn's sent Plaintiff a letter asserting that it had "carefully researched" the 2016 Account, had found no "errors or discrepancies," and therefore was "unable to delete" the 2016 Account from his credit report.[14]

Plaintiff later filed a complaint against Conn's with the Better Business Bureau concerning the 2016 Account.[15] Conn's responded that the 2016 Account balance "was not added to [the 2019 Account] as the remaining balance was under the threshold to be added."[16]

Plaintiff subsequently paid off the remaining balance of the 2016 Account.[17]

In November 2020, Conn's sent Plaintiff another letter, asserting the 2016 Account information was being reported accurately.[18] Later that same month, Plaintiff called Experian to

---

[10] "Defendant Experian Information Solution Inc.'s Motion for Summary Judgment" ("Def.'s MSJ"), Ex. 7, "March ACDV" 2, ECF No. 42-2, filed Jan. 13, 2023; Def. Mem. in Supp., Ex. 23, "Deposition of Christina Hamilton" 14:16–15:7, ECF No. 46-10, filed Jan. 24, 2023.

[11] Deposition of Christina Hamilton at 15:13–21.

[12] Pl.'s MSJ, Ex. J, "Plaintiff's April 2020 Letter to Defendant" 1, 3, ECF No. 40-12, filed Jan. 13, 2023.

[13] Def.'s MSJ, Ex. 11, "April ACDV" 2, ECF No. 42-6, filed Jan. 13, 2023; Deposition of Christina Hamilton at 25:20–26:21.

[14] Def. Mem. in Supp., Ex. 20, "Second and Third Conn's Letters" 3, ECF No. 46-7, filed Jan. 24, 2023.

[15] Def. Mem. in Supp., Ex. 5, "Conn's Response to BBB Complaint" 2, ECF No. 46-5, filed Jan. 24, 2023.

[16] *Id.*

[17] Loan Ledger at 4.

[18] Second and Third Conn's Letters at 1.

again dispute the 2016 Account.[19] Experian again sent an ACDV to Conn's requesting verification of the information reported for the 2016 Account.[20] Conn's responded that the 2016 Account "should continue reporting with delinquent payment history" and updated the 2016 Account to reflect it as being paid-out but having once been 150 days past due.[21]

Plaintiff mailed Experian a final time in February 2021, asserting the 2016 Account "should have been transferred and was closed in error."[22] Experian again sent an ACDV to Conn's, including Plaintiff's dispute letter, and Conn's again verified that Experian should report the account "as late in 2020."[23]

Experian eventually received an automatic update from Conn's for the 2016 Account showing its status as paid, closed, and never late, which was reflected in Plaintiff's December 2021 credit report.[24]

B.     Procedural Background

Plaintiff sued Experian—now Defendant—in May 2021, alleging violations of the Fair Credit Reporting Act ("FCRA").[25] Plaintiff asserted Defendant failed to maintain "reasonable procedures to assure maximum possible accuracy of the information" on his credit report in

---

[19] Deposition of Christina Hamilton at 29:1–30:4.

[20] Id. at 30:5–10.

[21] Id. at 30:11–19; Def.'s MSJ, Ex. 17, "November ACDV" 2, ECF No. 42-12, filed Jan. 13, 2023.

[22] Pl.'s MSJ, Ex. S, "Plaintiff's February 2021 Letter to Defendant" 1, ECF No. 40-21, filed Jan. 13, 2023.

[23] November ACDV at 2; Deposition of Christina Hamilton at 35:6-21.

[24] Def.'s MSJ, Ex. 18, "December Credit Report" 7, ECF No. 42-13, filed Jan. 13, 2023.

[25] "Complaint" ("Compl."), ECF No. 1, filed May 19, 2021.

violation of 15 U.S.C. § ("Section") 1681e(b) and "failed to conduct a reasonable investigation in response to Plaintiff's dispute in violation of [Section] 1681i."[26]

Following discovery, Defendant filed a motion for summary judgment, arguing Plaintiff failed to show, among other things, that Defendant's reporting was factually inaccurate.[27] The court granted Defendant's motion ("Order"), agreeing that Plaintiff's credit report reflected a legal dispute between him and Conn's, not a factual inaccuracy, which is a prerequisite for a claim under Section 1681e(b) or 1681i.[28]

Plaintiff now moves the court to vacate its judgment pursuant to Federal Rule of Civil Procedure ("Rule") 59(e).

## II.   **LEGAL STANDARD**

Rule 59(e) "allows a court to alter or amend a judgment to (1) accommodate an intervening change in controlling law, (2) account for newly discovered evidence, or (3) correct a manifest error of law or fact."[29] "It is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[30] "Altering, amending, or reconsidering a judgment is an extraordinary measure, which courts should use sparingly."[31]

---

[26] *Id.* at 3–4 ¶¶ 19–20.

[27] Def.'s MSJ at 1–2, ECF No. 42, filed Jan. 13, 2023.

[28] "Order Granting Motion for Summary Judgment" ("Order") 14–17, ECF No. 70, entered Apr. 26, 2023.

[29] *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019); *see* FED. R. CIV. P. 59(e).

[30] *Trevino*, 944 F.3d at 570 (citation and internal quotation marks omitted).

[31] *In re Self*, 172 F.Supp.2d 813, 815 (W.D. La. 2001).

Section 1681e(b) requires that CRAs "follow reasonable procedures to assure maximum possible accuracy" of information they publish in consumer credit reports.[32] If a consumer disputes the "completeness or accuracy" of any item on their credit report and so notifies a CRA, Section 1681i requires the CRA to "conduct a reasonable reinvestigation" into the accuracy of the item and "record the current status of the disputed information, or delete the item from the file" within thirty days of being notified of the dispute.[33]

Although neither section facially requires an actual inaccuracy to exist for a plaintiff to state a claim under the FCRA, courts in this circuit impose such a requirement.[34] Moreover, federal courts overwhelmingly agree that the FCRA only requires CRAs to investigate *factual* inaccuracies; they need not resolve legal disputes over an underlying debt.[35] This is because CRAs are "neither qualified nor obligated to resolve" legal issues, *i.e.*, those that turn "on questions that can only be resolved by a court of law."[36] In short, "reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."[37]

---

[32] 15 U.S.C. § 1681e(b).

[33] *Id.* at 1681i(a)(1)(A).

[34] *Toliver v. Experian Info. Sols., Inc.*, 973 F.Supp.2d 707, 715 (S.D. Tex. 2013) (citing *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 267 n. 3 (5th Cir. 2000)) ("In order to establish a *prima facie* case under § 1681e(b), a consumer must produce some evidence of an inaccuracy in her credit report."); *Walters v. Certegy Check Servs., Inc.*, No. A-17-CV-1100-SS, 2018 WL 1278212, at *4 (W.D. Tex. Mar. 12, 2018) ("[A] plaintiff must first contend a consumer report contained inaccurate information to establish a claim under § 1681i for failure to conduct a reasonable investigation."); *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 751 (S.D. Tex. 2006), *aff'd*, 224 Fed.App'x. 415 (5th Cir. 2007).

[35] *See, e.g., Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891–92 (9th Cir. 2010); *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567–68 (7th Cir. 2021); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1244–45 (10th Cir. 2015); *Williams v. Colonial Bank*, 826 F.Supp. 415, 418 (M.D. Ala. 1993); *Holland v. Chase Bank USA, N.A.*, 475 F.Supp.3d 272, 276–77 (S.D.N.Y. 2020).

[36] *DeAndrade*, 523 F.3d at 68.

[37] *Carvalho*, 629 F.3d at 892.

### III.   **DISCUSSION**

Plaintiff moves the court to vacate its judgment, arguing the court committed clear error by: (1) improperly viewing the facts in a light more favorable to Defendant, the movant; (2) concluding the facts presented a legal dispute; (3) finding, counter to alleged Fifth Circuit precedent, that legal disputes are outside the FCRA's purview; and (4) failing to consider Plaintiff's claim under Section 1681i(c).[38]

### A.   *Whether the Court Viewed the Facts in a Light More Favorable to the Movant*

Plaintiff believes the court viewed the facts in a light more favorable to Defendant, the movant. In doing so, the court allegedly made certain factual determinations, inappropriate for summary judgment, "as to what it believed was more likely given the evidence as a whole."[39] The court's "ultimate conclusion," Plaintiff asserts, "was that because there was conflicting evidence on whether [he] and Conn's disagreed about whether the 2016 Account was rolled into the 2019 Account, it must have been that Conn's in fact disagreed with [him]."[40] In other words, the court "effectively held that no reasonable juror could have possibly concluded that Conn's in fact agreed with Plaintiff that the 2016 Account was rolled into the 2019 Account."[41] Yet, as Plaintiff points out, summary judgment evidence created a genuine issue of material fact as to whether Conn's actually did or would have agreed with Plaintiff, and, therefore, the court should have presented the question to the jury.[42]

---

[38] Mot., Ex. 1, "Plaintiff's Memorandum of Law in Support of Motion to Amend Judgment" ("Pl. Mem. in Supp."), 4, 13, 19, 20, ECF No. 74-1, filed May 24, 2023.

[39] *Id.* at 1.

[40] *Id.* at 5.

[41] *Id.* at 6.

[42] *Id.* at 7.

Plaintiff grossly mischaracterizes the court's Order. At no point did the court ever conclude that Conn's and Plaintiff *in fact* disagreed about the relationship between the 2016 Account and 2019 Account. Neither did the court find, effectively or otherwise, that no reasonable juror could have found that Conn's and Plaintiff agreed on that point.

Plaintiff's mischaracterization appears to flow from his fundamental misunderstanding of the question that was before the court on summary judgment. Whether Conn's and Plaintiff *in fact* agreed on the issue of account rollover was not at all under consideration. Rather, the court assessed whether it *appeared to Defendant* that Conn's and Plaintiff disagreed. The court ultimately found that it did since Defendant received conflicting statements from Plaintiff and Conn's on whether the 2016 Account was rolled into the 2019 Account.[43] The court then addressed whether the conflicting statements represented a factual inaccuracy or a legal dispute. The court concluded that, because the conflicting statements pertained to whether a contract had been modified—regardless of whether it had *in fact* been modified—Defendant had before it a legal question, which, as a matter of law, is outside the purview of the FCRA.[44]

In short, the court did not "make credibility determinations, weigh the evidence [or] make inferences in favor of the movant."[45] It is perfectly possible that a jury could find Conn's in fact agreed the 2016 Account was or should have been rolled into the 2019 Account. But the question before the court was not whether the evidence *on summary judgment* conclusively showed agreement or disagreement. The issue was whether the evidence showed that *Defendant, based on*

---

[43] Order at 14.

[44] *Id.*

[45] *See* Pl. Mem. in Supp. at 12.

*the statements provided by Plaintiff and Conn's at the time*, had before it a legal question outside of its wheelhouse and better left to a trier of fact.

Indeed, the court *agrees* with Plaintiff that whether Conn's combined or intended to combine Plaintiff's accounts is a genuine issue of material fact. But that shows precisely *why* the question before Defendant was a legal one: Defendant is not a trier of fact and was ill-suited to make such a determination. In short, regardless of whether the question of contract modification was for the jury, Defendant was not required to adjudicate that dispute.

B.      *Whether the Court Erred in Concluding the Facts Presented a Legal Dispute*

Plaintiff asserts the court erred in concluding the apparent disagreement between Conn's and Plaintiff presented Defendant with a legal dispute. He offers several arguments in support, none of which have legal support.

a.      The court's "novel test"?

Plaintiff believes the court, in granting Defendant's motion for summary judgment, created a "novel test" whereby *any* disagreement between a data furnisher, like Conn's, and a consumer is a legal dispute outside the purview of a CRA's investigation duty.[46] Plaintiff's position is both disingenuous and amateurish. No reasonable person could read the court's Order as standing for the principle that any mere disagreement between a data furnisher and consumer suffices to create a legal dispute. Indeed, Plaintiff's reading is inconceivably broad and cherry-picks the court's language out of context. Plaintiff, astonishingly, goes so far as to misquote the court as having found that Defendant "had before it 'two parties who disagreed as to basic facts.'"[47] That is not

---

[46] *Id.* at 13.

[47] *Id.* at 19.

9

what the court wrote. The court found that "Defendant had before it two parties who disagreed as to *whether their contract had been modified*."[48]

Nor did the court announce any legal test or rules of law as district courts are not empowered to do so. On the contrary, district courts are tasked with simply applying the law. Sometimes this means reasoning by analogy or predicting how a higher court might interpret the law; but it never means announcing rules of law that other courts must apply. Here, the court simply concluded, by way of analogizing to similar cases, that *this* controversy involved a legal dispute since the evidence Plaintiff presented Defendant failed to conclusively show his account was rolled over, *i.e.*, a contract modification, which Plaintiff claimed and Conn's denied.[49] This does not create a "novel test" whereby any disagreement between consumer and data furnisher amounts to a legal dispute.

       b.      Supporting caselaw?

Second, Plaintiff asserts the court's purported "test" runs contrary to certain caselaw examples.[50] Setting aside the fact that the court announced no such test, the cases he offers were already presented for consideration on summary judgment, making them improper bases for a motion to amend judgment.[51] And even setting *that* aside, Plaintiff's proffered caselaw, which he consistently stretches and misrepresents, is either not on point, nonbinding, or both.

---

[48] *See* Order at 15.

[49] *See id.* at 11–16.

[50] Pl. Mem. in Supp. at 14.

[51] *See Trevino*, 944 F.3d at 570 ("It is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.") (citation and internal quotation marks omitted).

Plaintiff asserts that, under the Fifth Circuit's decision in *Stevenson v. TRW, Inc.*, the fact "a furnisher disagrees with a consumer does not then create a legal dispute absolving the CRA of liability."[52] But *Stevenson* did not apply the now-common distinction between factual inaccuracies and legal disputes. Had it done so, the Fifth Circuit arguably would have found the issue factual since the consumer there disputed accounts on his credit report as simply belonging to other individuals with the same name (*i.e.*, verifiable data errors). More importantly, *Stevenson* is simply not on point. There, the Court held the CRA liable under the FCRA because it: (1) failed to remove certain inaccurate information quickly enough; (2) failed to remove other inaccurate information even after the furnisher confirmed it to be inaccurate; and (3) allowed incorrect information it had previously removed from the consumer's credit report to reappear shortly thereafter.[53] None of those issues are in play here.

Next, Plaintiff argues the Fifth Circuit in *Pinner v. Schmidt* "specifically held that it was within the purview of [a] CRA to get in the middle of [a] contract dispute."[54] The Court made no such holding. Plaintiff also misrepresents the basic facts of *Pinner*. According to his read, a CRA investigated an account dispute by contacting the data furnisher, which confirmed the account as delinquent, whereupon the CRA negligently verified it as accurate.[55] Those are not the facts of *Pinner*. Rather, a consumer disputed a debt on his credit report while also alerting the CRA that he and the manager of the store that held the debt were social and business rivals.[56] The CRA then

---

[52] Pl. Mem. in Supp. at 14 (discussing *Stevenson v. TRW, Inc.*, 987 F.2d 288 (5th Cir. 1993)).

[53] *Stevenson*, 987 F.2d at 293.

[54] Pl. Mem. in Supp. at 15 (discussing *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986)).

[55] Pl. Mem. in Supp. at 15.

[56] *Pinner*, 805 F.2d at 1260, 1262.

contacted only the manager—not the data furnisher (*i.e.*, the store)—who then validated the debt.[57] The Fifth Circuit—which again did not apply the factual inaccuracy-legal dispute distinction— held it "unreasonable for [the CRA] to contact only [the manager]," which the CRA "knew to have had disagreements with [the consumer] in the past."[58] *Pinner*, like *Stevenson*, is clearly wide of the mark.

Plaintiff also offers a few cases from other circuit courts. He argues *Cushman v. Trans Union Corp.* stands for the proposition that when a data furnisher disagrees with a consumer on whether an account belonged to the consumer and verifies inaccurate information, a CRA may be liable for failing to conduct a reasonable investigation.[59] *Cushman* concerned a CRA's failure to conduct a handwriting comparison after the consumer claimed certain credit card accounts on her credit report were fraudulently obtained.[60] When the CRA initially contacted the credit card companies, they merely confirmed the relevant information on the accounts matched.[61] Importantly, a handwriting comparison in response to a claim that a credit card was fraudulently obtained is a routine procedure. Determining whether a contract was modified, absent any pertinent documentation, is not routine.

Next, Plaintiff offers *Losch v. Nationstar Mortgage LLC*, which he broadly summarizes as a case in which a CRA failed to conduct a reasonable investigation after a data furnisher and

---

[57] *Id.* at 1262.

[58] *Id.*

[59] Pl. Mem. in Supp. at 15 (discussing *Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997)).

[60] *Cushman*, 115 F.3d at 222.

[61] *Id.*

consumer disagreed over the balance of the consumer's debt.[62] Plaintiff's summary is generally correct, but ignores critical details. In *Losch,* the Eleventh Circuit concluded a CRA's report was *factually* inaccurate because it reflected the consumer's mortgage as still owed and past due even though he had filed for bankruptcy, which, although it does not expunge a debt, wipes away an insolvent individual's liability for payment.[63] Therefore, the consumer's mortgage plainly could not be past due. Because *Losch* explicitly pertained to a simple, factual inaccuracy, it is inapplicable here.

According to Plaintiff, *Bryant v. TRW, Inc.* shows that CRAs can be liable for failing to conduct reasonable investigations when a data furnisher disagrees with a consumer over the status of debt payment delinquencies.[64] Plaintiff misrepresents *Bryant,* which is distinguishable. In that case, a consumer's credit report showed two accounts as past due even though he had made timely payments.[65] A jury found the CRA liable under the FCRA because it failed to use reasonable procedures to ensure the plaintiff's credit report was accurate.[66] The CRA appealed, arguing "the inaccuracies were those of plaintiff's creditors and that, under [the FCRA], all it had to do was report accurately whatever information the creditors furnished."[67] The Sixth Circuit disagreed, concluding "that a consumer reporting agency does not necessarily comply with [the FCRA] by simply reporting in an accurate manner the information it receives from creditors."[68] Thus, not

---

[62] Pl. Mem. in Supp. at 15 (discussing *Losch v. Nationstar Mortg. LLC,* 995 F.3d 937 (11th Cir. 2021)).

[63] *Losch,* 995 F.3d at 945.

[64] Pl. Mem. in Supp. at 15 (discussing *Bryant v. TRW, Inc.,* 689 F.2d 72 (6th Cir. 1982)).

[65] *Bryant,* 689 F.2d at 76–77.

[66] *Id.* at 74.

[67] *Id.* at 77.

[68] *Id.* at 78.

only did *Bryant* concern an arguably simple and factual inaccuracy (*i.e.*, a credit report incorrectly reflecting a nonpayment), but its holding is not at issue here.

Plaintiff also cites to *Bradshaw v. BAC Home Loans Servicing, LP*, an out-of-circuit district court opinion.[69] In that case, mortgagors sought a home loan modification to reduce their monthly payments, to which the mortgagee allegedly agreed and which its agents orally ratified.[70] Nevertheless, the mortgagee later rescinded what it considered merely an offered modification and told the mortgagors their account was past due, which was later reflected on their credit report.[71] Mortgagors disputed this to certain CRAs, who contacted the mortgagee, who in turn confirmed the report was accurate.[72] Mortgagors then sued the CRAs. On summary judgment, the Court "agree[d] that defendants were not qualified to evaluate the legal status of plaintiffs' loan modification. Defendants were not parties to the loan agreement, and had no means outside of the information they received from plaintiffs and [the mortgagee] to determine whether the loan modification had in fact been approved."[73] Nevertheless, the Court found it could not "conclude that plaintiffs' credit reports were accurate as a matter of law" since several facts showed that whether the loan was modified "remain[ed] a factual question to be determined by a jury."[74]

As made clear above, however, that finding conflates two questions: determining whether a contract was in fact modified—an appropriate task for a factfinder—is different than asking

---

[69] Pl. Mem. in Supp. at 16 (discussing *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066 (D. Or. 2011)).

[70] *Bradshaw*, 816 F. Supp. 2d at 1069–70.

[71] *Id.*

[72] *Id.* at 1070.

[73] *Id.* at 1071.

[74] *Id.* at 1071–73.

whether a CRA had before it the kind of dispute appropriate for a factfinder, such as a legal dispute. Furthermore, although *Bradshaw* labored to distinguish *Carvalho v. Equifax Information Services, LLC*, it ignored critical language from the Ninth Circuit's opinion in that case: "**Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims.**"[75] Being that it was predicated on a contract dispute, *Bradshaw* arguably should have come out the other way. Regardless, *Bradshaw* is neither binding nor particularly persuasive, and the court declines to follow it.

Finally, Plaintiff rehashes *Hurst v. Equifax Information Services, LLC*, a case from this district, which was thoroughly briefed in the parties' prior motions for summary judgment and analyzed in detail in the court's Order.[76] Plaintiff strongly asserts, however, that the court's "prior factual analysis of *Hurst* was in error."[77] As Plaintiff reads it, the court's Order incorrectly distinguished *Hurst* on the basis that the CRAs in that case did *not* contact the data furnisher while Defendant here did.[78] Yet, Plaintiff asserts, the CRAs in *Hurst* did in fact contact the data furnisher, who verified erroneous information.[79] Plaintiff misrepresents *Hurst* and egregiously misunderstands the court's Order.

---

[75] *See Carvalho*, 629 F.3d at 891.

[76] *See* Pl. Mem. in Supp. at 16–18 (discussing *Hurst v. Equifax Info. Servs., LLC*, No. SA-20-CV-1366-JKP-ESC, 2021 WL 5926125 (W.D. Tex. Dec. 15, 2021)).

[77] Pl. Mem. in Supp. at 16.

[78] *Id.*

[79] *Id.* at 17.

In *Hurst*, a landlord and tenant—two parties to a contract—allegedly verbally terminated a lease.[80] Nevertheless, the landlord later hired a debt collection agency, ProCollect, to collect on the outstanding balance.[81] ProCollect reported the alleged debt to CRAs, who then published that information.[82] The tenant disputed the debt as inaccurate to the CRAs, who did not contact the landlord to verify whether it had terminated the lease.[83] For that matter, it is not particularly clear whether the CRAs contacted ProCollect.[84] Regardless, because they hadn't contacted the landlord, the alleged inaccuracy was plausibly factual: if the landlord had verified the tenant's story, "then the credit reporting agency [would have had] no need to delve into any legal ramifications of the terminated lease."[85]

This court distinguished *Hurst* by pointing out that "[i]n that case, two parties formed a contractual agreement, one of the parties later asserted the agreement had been terminated, yet the CRAs never contacted the other party to corroborate or refute the first party's assertion. . . . But unlike *Hurst*, Defendant here *did* receive statements from both parties to the disputed contract, and those statements conflicted."[86] In short, the court did *not* assert the CRAs in *Hurst* failed to contact

---

[80] *Hurst*, 2021 WL 5926125, at *1.

[81] *Id.*

[82] *Id.*

[83] *Id.* at *1, *6.

[84] *See id.* at *1 ("ProCollect furnished information to the credit reporting agencies . . . who published it. According to Plaintiff, the information is inaccurate since the lease was properly terminated with the Landlord and, hence, Plaintiff is not responsible for the lease balance. Plaintiff has notified the CRA Defendants that she disputes the accuracy of the reported information. Despite her dispute, the CRA Defendants neither timely evaluated or considered any of the information, claims, or evidence of the Plaintiff nor timely made an attempt to substantially reasonably verify that the derogatory information concerning the disputed account was inaccurate. And ProCollect failed to continuously mark the account as disputed despite receiving notice of Plaintiff's dispute.") (internal quotation marks and citations omitted).

[85] *Id.* at *6.

[86] Order at 13–14.

the data furnisher, as asserted by Plaintiff, but that the CRAs failed to contact one of the parties to a disputed contract.

Plaintiff also underhandedly purports to quote *Hurst* in his effort to convince the court to amend final judgment. In actuality, his offered quotes come from an alleged exhibit connected to one of the parties' prior motions for summary judgment (it is unclear which party or which exhibit).[87] For example, in claiming "[t]he facts of *Hurst* are indisputably clear," Plaintiff immediately offers the following passage: "'The Defendant Procollect violated [the FCRA] by . . . failing to correctly report results of an accurate investigation to the credit reporting agencies.[']"[88] But Plaintiff's quote does not come from *Hurst*. Nor did the Court in *Hurst* ever make such a conclusion since the tenant and ProCollect entered into a joint stipulation of dismissal before the Court reached the merits.[89]

For these and the reasons discussed in the Order, Plaintiff's case is *not* "identical to the facts of *Hurst*."[90]

        c.      Relying on post-discovery evidence?

Next, Plaintiff complains the "entirety" of the court's Order "relie[d]" and was "base[d]" upon evidence that came to light only after discovery, *i.e.*, evidence Defendant did not have before

---

[87] "All citations [to exhibits]" in Plaintiff's Motion "relate to the Exhibits provided in support of the parties' Motions for Summary Judgment." Pl. Mem. in Supp. at 2 fn. 1. Plaintiff cites Exhibit A, paragraph 86, for the above-quoted passage. *Id.* at 17. Exhibit A to Plaintiff's motion for summary judgment, however, is the promissory note connected with the 2016 Account, not a description of *Hurst* with numbered paragraphs. *See* ECF No. 40-3. Indeed, elsewhere in Plaintiff's Motion he cites to Exhibit A correctly as evidence of the 2016 Account. *See* Pl. Mem. in Supp. at 2. The court attempted, but was unable, to find the quoted language somewhere in Plaintiff's motion for summary judgment or its exhibits.

[88] *Id.* at 17.

[89] *See Hurst*, 2021 WL 5926125, at *2.

[90] *See* Pl. Mem. in Supp. at 18.

it when Plaintiff disputed his credit report.[91] This, he asserts, "flies in the face of the FCRA's objectives to ensure maximum possible accuracy" by incentivizing CRAs to disregard their duty to conduct reasonable investigations.[92]

Plaintiff is, once again, wildly mistaken. The court previously found that Defendant, prior to litigation, received conflicting statements from Plaintiff and Conn's as to whether their contract was modified, which included initial disputes and the Conn's Deletion Letter from Plaintiff and ACDVs from Conn's.[93] "*Thus,*" the court concluded, "Defendant was not confronted with a mere factual inaccuracy"[94] "In fact," the court subsequently noted, "even the post-discovery evidence presented on summary judgment fails to establish that Conn's agreed the 2016 Account was or should have been rolled into [the] 2019 Account."[95] That statement, however, was clearly meant to emphasize by inference the finding that *pre*-litigation evidence was insufficient to show a contract modification.[96]

Plaintiff fails again in his attempt to misrepresent the court's Order.

C.      *Finding Legal Disputes Outside the FCRA's Purview*

Plaintiff makes a final, last-ditch effort to undermine the court on statutory interpretation grounds. As he points out, in the Fifth Circuit, courts must begin their interpretation "with the plain

---

[91] *Id.* at 18–19.

[92] *Id.*

[93] Order at 14.

[94] *Id.* at 14 (emphasis added).

[95] *Id.* at 14.

[96] *See id.* at 16 ("To resolve the controversy, Defendant would have needed to adjudicate between Plaintiff and Conn's by gathering evidence and determining evidentiary credibility. Indeed, if even the evidence compiled on summary judgment fails to conclusively show the 2016 Account was consolidated into the 2019 Account, then certainly Defendant was neither qualified nor obligated to resolve that issue.") (internal quotation marks omitted).

language . . . of the statute."[97] The FCRA requires CRAs to "follow reasonable procedures to assure maximum possible accuracy" in the credit reports they prepare.[98] To that end, Plaintiff argues "[t]he statute is plain; there is no ambiguity to the phrase accuracy."[99] Therefore, vacating the order is required "under binding Fifth Circuit authority."[100] Plaintiff's argument is, for several reasons, untenable.

First, to say that a generalized principle outlining a philosophy of interpretation somehow binds the *form* and *substance* this court's interpretation takes is absurd. Furthermore, to argue the term "accuracy" has no ambiguity whatsoever is similarly ridiculous. Finally, Plaintiff's position ignores the myriad instances where other district and circuit courts have found that "accuracy" under Section 1681e(b) pertains only to factual issues and does not encompass legal disputes.[101] Thus, the court's Order, far from controversially flouting binding precedent, is consistent with the great weight of authority.

### D.   *Failing to Consider Plaintiff's Claim Under Section 1681i(c)*

Finally, Plaintiff charges the court with erroneously failing to consider his claims under Section 1681i(c),[102] which requires that, "[w]henever a statement of a dispute is filed," the CRA "shall, in any subsequent consumer report containing the information in question, clearly

---

[97] Pl. Mem. in Supp. at 19.

[98] 15 U.S.C. § 1681e(b).

[99] Pl. Mem. in Supp. at 19.

[100] *Id.* at 20.

[101] *See*, *supra*, note 35.

[102] Pl. Mem. in Supp. at 20.

note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof."[103] Plaintiff's position fails for several reasons.

First, it is doubtful that Plaintiff even stated a claim under Section 1681i(c). He asserted two causes of action in his complaint. First, he asserted that Defendant violated Section 1681e(b) by failing to "follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff."[104] Second, he charged Defendant with violating Section 1681i(a)(1)(A) by failing to "conduct a reasonable investigation in response to Plaintiff's dispute."[105] Nowhere in the complaint, however, does Plaintiff mention Section 1681i(c). At most, he makes a passing factual allegation that Defendant "failed to mark Plaintiff's initial account as in-dispute as required by the FCRA."[106] But he does not tie that allegation to a specific violation under the statute in his causes of action. Nor was Section 1681i(c) raised during summary judgment until deep into the parties' voluminous briefings when Plaintiff began arguing, only in *response* to Defendant's motion for summary judgment, that Defendant violated that provision.[107]

---

[103] 15 U.S.C. § 1681i(c).

[104] Compl. at 3 ¶ 19.

[105] *Id.* at 4 ¶ 20; *see* 15 U.S.C. § 1681i(a)(1)(A) ("Subject to subsection (f) and except as provided in subsection (g), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.").

[106] *See* Compl. at 3 ¶ 14.

[107] *See* "Plaintiff Victor Estrada's Opposition to Defendant Experian Information Solutions, Inc.'s Motion for Summary Judgment" 13–14, ECF No. 51, filed Feb. 10, 2023.

Second, even if Plaintiff's complaint sufficiently implied a Section 1681i(c) claim, the court need not have reached it. Immediately preceding subdivision (c) is subdivision (b), which states that "[i]f the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute."[108] Accordingly, Section 1681i(c) comes into play only after a CRA investigates a dispute.[109] But a CRA's duty to investigate does not kick in until a consumer's credit report contains a factual inaccuracy.[110] Because Plaintiff's credit report reflected a legal dispute, it follows that Defendant's duty to investigate was not triggered and, by extension, neither was Section 1681i(c).

Finally, the court *did* address Section 1681i(c) in its Order, finding that "simply alerting a CRA that one disputes something on one's credit report and requesting that a CRA investigate, as Plaintiff did here, is not the same as providing a formal statement detailing one's version of the dispute to be included in that report."[111] Indeed, Plaintiff never requested a statement of dispute be added to his credit report. Nor can anything Plaintiff submitted to Defendant be construed as a properly filed statement of dispute under subdivision (b) since he did not "set[] forth the nature of the dispute."[112] He mailed Defendant three times, each time perfunctorily referencing the Conn's Deletion Letter and vaguely asserting the 2016 Account should "be marked as paid and closed []

---

[108] 15 U.S.C. § 1681i(b).

[109] *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1335 (9th Cir. 1995).

[110] *Walters*, 2018 WL 1278212, at *4 ("[A] plaintiff must first contend a consumer report contained inaccurate information to establish a claim under § 1681i for failure to conduct a reasonable investigation."); Order at 16 (CRAs are not required to investigate legal disputes).

[111] Order at 17 (citing *DeAndrade*, 523 F.3d at 64, 69; *Williams*, 826 F.Supp. at 417–18; *Chuluunbat*, 4 F.4th at 565, 569).

[112] *See* 15 U.S.C. § 1681i(b).

with zero late payments" or "should have been transferred."[113] The Conn's Deletion Letter, meanwhile, merely stated that Conn's would delete the 2016 Account from Plaintiff's credit report since the company was "not able to verify the information previously reported on [that account]."[114] None of this apprised Defendant of Plaintiff's position that Conn's employees told him his accounts would be combined or put Defendant on notice that Plaintiff sought to have his dispute reflected on his credit report.

Accordingly, Plaintiff's assertion that the court erred with respect to Section 1681i(c) is incorrect.

## IV.   **CONCLUSION**

For the foregoing reasons, it is **HEREBY ORDERED** that "Plaintiff's Motion to Alter Judgment" [ECF No. 74] is **DENIED**.

**SIGNED AND ENTERED** this __7__ day of **July 2023.**

**FRANK MONTALVO**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[113] Plaintiff's March 2020 Letter to Defendant at 2; Plaintiff's April 2020 Letter to Defendant at 1; Plaintiff's February 2021 Letter to Defendant at 1.

[114] First Conn's Letter at 1.

22